Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
TORYS LLP
237 Park Avenue
New York, New York 10017
(212) 880-6000

*Attorneys for Plaintiff*
*Chapdelaine Corporate Securities & Co.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

CHAPDELAINE CORPORATE SECURITIES & CO.,  :

                         Plaintiffs,  :

              - against -  :

THE DEPOSITORY TRUST & CLEARING  :
CORPORATION, FIXED INCOME CLEARING  :
CORPORATION and NATIONAL SECURITIES  :
CLEARING CORPORATION,  :

                  Defendants.  :

------------------------------------------------------------------ x

Index No. 05 cv 10711 (SAS)

**COMPLAINT**

**ECF CASE**

      Plaintiff Chapdelaine Corporate Securities & Co. ("Chapdelaine"), by and through its

counsel Torys LLP, complaining of defendants The Depository Trust & Clearing Corporation

("DTCC"), Fixed Income Clearing Corporation ("FICC") and National Securities Clearing

Corporation ("NSCC"), alleges as follows:

## <u>NATURE OF ACTION</u>

      1.     This is an action for, <u>inter alia</u>, antitrust violations under Section 2 of the Sherman

Act, 15 U.S.C. §2, false advertising under the Lanham Act, 15 U.S.C. §1125(a), and substantial

and related claims under the statutory and common law of the State of New York.

## JURISDICTION AND VENUE

2.      Chapdelaine asserts federal claims herein arising under (i) Section 16 of the

Clayton Act, 15 U.S.C. §26, to prevent and restrain violations of Section 2 of the Sherman Act,

15 U.S.C. §2, and for damages under Section 4 of the Clayton Act, 15 U.S.C. §15; (ii) the United

States Lanham Trademark Act of 1946, 15 U.S.C. §1125(a); and (iii) substantial and related

claims under New York State and common law.

3.      This court has federal question jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331, as well as under Section 4 of the Clayton

Act, 15 U.S.C. §15, because the action arises under Section 2 of the Sherman Act, 15 U.S.C. §2.

4.      This Court has supplemental jurisdiction over Chapdelaine's claims arising under

state law pursuant to 28 U.S.C. §1367.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b), as

Defendants maintain their principal places of business in this Judicial District, and, pursuant to

28 U.S.C. §1391(b)(1) and (2), because a substantial part of the events giving rise to the claims

herein occurred in this Judicial District.

## PARTIES

6.      Chapdelaine is a partnership organized and existing under the laws of the State of

New York, and maintains its principal place of business at One Seaport Plaza, New York, New

York.

7.      Upon information and belief, DTCC is a corporation organized and existing under

the laws of the State of New York, and maintains its principal place of business at 55 Water

Street, New York, New York 10041.  Upon further information and belief, DTCC is owned by

2

the New York Stock Exchange, the National Association of Securities Dealers, and leading banks and broker/dealers.

8.     Upon information and belief, FICC is a corporation organized and existing under the laws of the State of New York, and maintains its principal place of business at 55 Water Street, New York, New York 10041.  Upon further information and belief, FICC is a wholly-owned subsidiary of DTCC.

9.     Upon Information and belief, NSCC is a corporation organized and existing under the laws of the State of New York, and maintains its principal place of business at 55 Water Street, New York, New York 10041.  Upon further information and belief, NSCC is a wholly-owned subsidiary of DTCC.

10.     Defendants are engaged in interstate commerce, and the unlawful activities alleged below have occurred in, and have substantially affected, interstate commerce.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11.     Chapdelaine is an interdealer broker that acts as an intermediary between dealers and dealer banks in the brokerage of corporate bonds and U.S. Government zero-coupon securities.

12.     Chapdelaine is the developer and owner of a unique "Fail Management System" that tracks and confirms failed trades ("fails") of fixed-income securities, including mortgage-backed securities.  Chapdelaine's Fail Management System is the subject of several pending U.S. patent applications and is the first system developed to specifically track and confirm such failed trades.

13.     Upon information and belief, DTCC, through its subsidiaries, FICC, NSCC and others, provides clearance, settlement and information services for equities, corporate and

3

municipal bonds, government and mortgage-backed securities, over-the-counter credit derivatives and emerging market debt trades.

14.     Upon information and belief, FICC provides trade comparison, netting, settlement, automated post-trade comparison, risk management and pool notification services for the government securities marketplace and the mortgage-backed securities marketplace.

15.     Upon information and belief, NSCC  provides clearing and settlement, risk management, central counterparty services and a guarantee of completion for trades involving equities, corporate and municipal debt, money market instruments, American depositary receipts, exchange-traded funds, unit investment trusts, mutual funds, insurance products and other securities.

16.     Upon information and belief, NSCC, in or about August 1990, introduced the Reconfirmation and Pricing Service ("RECAPS") system.  RECAPS was introduced for the purpose of reentering municipal and corporate securities into NSCC's Continuous Net Settlement System ("CNS").  Upon further information and belief, CNS nets trades between market participants to elevate the movement of securities during the settlement process.

17.     Upon information and belief, RECAPS was not specifically designed to track failed trades in the mortgage-backed securities market, and therefore has several limitations in terms of tracking and handling fails.  First, RECAPS was designed for the operations of a limited number of specific stock exchanges.  Each of those exchanges has its own specific means of operation.  Thus, RECAPS is useful for processing fails only for those particular exchanges. Second, the percentage of municipal and corporate securities traded on the floor of such exchanges is insignificant in relation to the total volume of municipal and corporate securities

traded in the over-the-counter market. Thus, RECAPS is not capable of dealing with the vast majority of failed municipal and corporate trades.

18.     Upon information and belief, the fail confirmation process in RECAPS is performed quite infrequently (only about four time per year), and on a relatively small number of all trades, and takes a long period of time to execute in each instance. It is thus unsuitable as a comprehensive system to handle failed trades.

19.     Upon information and belief, DTCC, is the sole and exclusive provider of automated post-trade comparison, netting, risk management and pool notification services to the mortgage-backed securities market, providing services to major market participants active in various Government National Mortgage Association (GNMA), Federal Home Loan Mortgage Corporation (FHLMC) and Fannie Mae (FNMA) Mortgage-Backed Securities programs.

20.     Upon information and belief, at the expense of consumers and business, Defendants have reaped substantial profits from the monopoly power they wield in providing clearing services in the mortgage-backed securities market. Upon further information and belief, Defendants' illegal maintenance of their monopoly has caused, or is likely to cause, injury to competition in the clearing services for the mortgage-backed securities market.

21.     Chapdelaine's Fail Management System provides participants with the ability to track, confirm and manage fails in the mortgage-backed securities market by allowing them to view, submit and retrieve information over the Internet in a secure and safe manner. The Fail Management System significantly reduces the processing delays and failures in transacting settlements in the mortgage-backed securities market. In addition, Chapdelaine's Fail Management System will provide greater efficiency and cost savings to the ultimate consumers in the mortgage-backed securities market.

22.     Specifically, Chapdelaine's Fail Management System would enable firms to (i) establish a formalized fail process; (ii) reduce operational risks; (iii) reduce capital requirements; (iv) reduce internal processing costs; (v) increase productivity by providing faster fail resolution; (vi) improve operation efficiency; (vii) improve the firm's ability to handle large amounts of fails; (viii) reduce or eliminate costly omission errors; (ix) achieve substantial cost savings in the processing of mortgage-backed securities transactions; and (x) effectively manage fail processing through a completely automated procedure reducing a firm's capital requirements, market risk and exposure to potential regulatory and compliance issues.

23.     In addition to the foregoing, Chapdelaine's Fail Management System provides numerous other advantages in tracking and handling mortgage-backed securities transactions, including, the identification of so-called "round robin" transactions and identifying and reporting exposure due to aged failed transactions.

24.     Beginning in or about February 2005, Chapdelaine attempted to negotiate a license agreement with DTCC and its subsidiaries, so that DTCC could provide Chapdelaine's unique Fail Management System to the securities dealer industry.

25.     In April 2005, Chapdelaine entered into a Non-Disclosure Agreement with FICC, pursuant to which Chapdelaine provided FICC with complete details and documentation concerning the Fail Management System for Defendants' evaluation.

26.     The information and material provided by Chapdelaine pursuant to the Non-Disclosure Agreement provided Defendants with everything necessary to replicate Chapdelaine's Fail Management System.  Such information and material included the functional specifications of the Fail Management System, a procedures manual for the system, a business plan, and revenue projections.

6

27.    Upon information and belief, despite expressing interest in Chapdelaine's system, Defendants took several months to conduct their review, and ultimately never responded to Chapdelaine.

28.    In view of Defendants' delay in responding, Chapdelaine notified Defendants that it was discontinuing negotiations in September 2005.

29.    During the period that Chapdelaine was negotiating with Defendants, Chapdelaine also made proposals to other potential licensees of the Fail Management System, including major banks and financial institutions.  However, these potential licensees indicated that they would prefer to await the outcome of Chapdelaine's negotiations with Defendants, since Defendants provided all of their other clearing services, before deciding whether to proceed with an agreement with Chapdelaine.

30.    After Chapdelaine concluded its negotiations with Defendants, it continued to make proposals to other potential licensees. However, upon information and belief, while these parties continued to express interest in Chapdelaine's Fail Management System, they were actively discouraged by Defendants from entering into a relationship with Chapdelaine.

31.    Upon information and belief, thereafter, on or about November 3, 2005, DTCC announced at a bond market industry conference that it would be developing its own system to confirm fails for fixed income securities.  Upon further information and belief, it was reported that the new system would be based on the RECAPS system.

32.    Upon information and belief, DTCC's announcement concerning its development of a system to confirm fails was intended to, and has caused potential licensees of Chapdelaine's Fail Management System to cease negotiations with Chapdelaine, and such announcement has had such effect.

33.     Upon information and belief, DTCC's announcement was untrue, and was made solely to discourage potential licensees from negotiating or entering into agreements with Chapdelaine.

34.     Upon information and belief, in order to convert RECAPS to a fail management system that meets the current needs of the fixed income/mortgage-backed securities market, Defendants would have to replicate, in whole or in material part, Chapdelaine's Fail Management System.

35.     Upon information and belief, Defendants have violated the Non-Disclosure Agreement by using the information and material provided pursuant to the Non-Disclosure Agreement for purposes of developing a competing fail management system.

36.     On or about November 17, 2005, Chapdelaine demanded that Defendants return all materials provided by Chapdelaine pursuant to the Non-Disclosure Agreement, and produce any materials Defendants have developed in furtherance of their purported fail management system.  To date, Defendants have not complied with Chapdelaine's demand.

## RELEVANT MARKET

37.     Securities trading has benefited from automated processing and settlement using computers.  However, securities come in many forms, and so different automation techniques are used for different forms of security.  Generally, high demand securities, such as mutual funds, stocks and bonds, have undergone greater trading automation than others.

38.     One class of securities that is increasingly in demand is mortgage-backed securities.  In the year 2003, there were times that the outstanding debt in the mortgage-backed securities industry exceeded $3 trillion.  Despite this demand, the processing and settlement techniques for mortgage-backed securities have remained relatively static over the last twenty-

8

five years.  As demand for mortgage-backed securities has increased, there have increasingly been industry-wide delays and failures in transaction settlements, and the need for improvement in the automation of claiming and settlement techniques for mortgage-backed securities.

39.     The relevant market consists of the relevant geographic market and the relevant product market.

40.     The relevant geographic market is the United States.

41.     The relevant product market is clearing services for the mortgage-backed securities market.

42.     Through the anticompetitive conduct described herein, Defendants have willfully maintained, and, unless restrained by this Court, will continue to willfully maintain, monopoly power over clearing services for the mortgage-backed securities market by anticompetitive and unreasonably exclusionary conduct.  Individually and collectively, Defendants' anticompetitive acts were undertaken for purpose of preventing Chapdelaine from introducing its unique new Fail Management System which would compete with Defendants in providing clearing services in the mortgage-backed securities market, particularly in the area of failed trades, and compete with their unlawful monopoly.

**FIRST CAUSE OF ACTION**
**(Monopolization, 15 U.S.C §2)**

43.     Chapdelaine repeats and realleges each and every allegation set forth in paragraphs 1 through 42 above as if fully set forth herein.

44.     Defendants possess monopoly power in providing clearing services for the mortgage-backed securities market.  Through the anticompetitive conduct described herein, Defendants have willfully maintained, and unless restrained by this Court, will continue to willfully maintain, that power by anticompetitive and unreasonably exclusionary conduct.

9

Defendants have acted with an intent to illegally maintain their monopoly power in this market across the United States, and their illegal conduct has allowed them to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

45.     Defendants' monopoly power coupled with their anticompetitive conduct has had, or is likely to have, among other things, the following effects:  (a) actual and potential competition in this market across the United States has been limited, reduced, restrained, suppressed and effectively foreclosed; (b) consumers and business in this market have paid or are likely to pay artificially inflated prices; (c) actual and potential competitors of Defendants in this market effectively have been foreclosed from competing on the merits with Defendants and injured in their business and property; (d) business have fewer options in the market and must contend with inferior technology; and (e) instead of free and open competition in the market, a monopoly has been established and maintained.

46.     As a result of Defendants' violations of Section 2 of the Sherman Act, Chapdelaine has been injured in its business and property and is therefore entitled to damages.

47.     Such violations and the efforts in furtherance thereof are continuing and will continue unless the injunctive relief requested is granted.  In addition, because Defendants' anticompetitive conduct is threatening to deprive Chapdelaine of its right to license or otherwise exploit its Fail Management System, Chapdelaine is threatened with irreparable harm. Chapdelaine has no adequate remedy at law, and will suffer irreparable harm absent the granting of injunctive relief.

48.     Accordingly, Chapdelaine is entitled to recover treble damages from Defendants in an amount to be proven at trial, and to an injunction enjoining Defendants from continuing to engage in anticompetitive conduct, together with Chapdelaine's attorney's fees.

5976685.3
32715-2001

## SECOND CAUSE OF ACTION
### (False Advertising, Lanham Act § 43(a))

49.     Chapdelaine repeats and realleges each and every allegation set forth in paragraphs 1 through 48 above as if fully set forth herein.

50.     Upon information and belief, Defendants have falsely represented to the entire bond market industry, including all parties that may have been interested in obtaining a license to use Chapdelaine's Fail Management System, that they are developing plans for their own fail management service to confirm fails for fixed income securities, including mortgage-backed securities.

51.     As a result of the foregoing, Defendants have misrepresented the nature of their commercial activities in violation of § 43 of the Lanham Act, 15 U.S.C. §1125(a).

52.     Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Chapdelaine, for which it has no adequate remedy at law.

## THIRD CAUSE OF ACTION
### (Breach of Contract)

53.     Chapdelaine repeats and realleges each and every allegation set forth in paragraphs 1 through 52 above as if fully set forth herein.

54.     Upon information and belief, Defendants have used and will continue to use the confidential information and material concerning Chapdelaine's Fail Management System, provided pursuant to the Non-Disclosure Agreement with Chapdelaine, in order to develop a competing fail management system.

55.     Such conduct on Defendants' part is a breach of the Non-Disclosure Agreement.

56.     Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Chapdelaine, for which it has no adequate remedy at law.

5976685.3
32715-2001

## FOURTH CAUSE OF ACTION
### (Breach of Contract)

57.     Chapdelaine repeats and realleges each and every allegation set forth in paragraphs 1 through 56 above as if fully set forth herein.

58.     Pursuant to the Non-Disclosure Agreement between Chapdelaine and Defendants, Defendants were obligated to immediately return all confidential information and material concerning Chapdelaine's Fail Management System upon Chapdelaine's request.

59.     Despite Chapdelaine's request that Defendants return all materials provided by Chapdelaine pursuant to the Non-Disclosure Agreement, Defendants have failed and continue to fail to do so.

60.     Such conduct on Defendants' part is a breach of the Non-Disclosure Agreement.

61.     Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Chapdelaine, for which it has no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### (Misappropriation)

62.     Chapdelaine repeats and realleges each and every allegation set forth in paragraphs 1 through 61 above as if fully set forth herein.

63.     A confidential relationship arose between Chapdelaine and Defendants by virtue of Chapdelaine's disclosure of confidential information regarding its Fail Management System and its business strategies associated with the system.

64.     Chapdelaine disclosed the confidential material in furtherance of a business venture with the Defendants.

65.     Chapdelaine's Fail Management System was new and novel to the securities industry at the time of its disclosure to the Defendants.

5976685.3
32715-2001

66.     Upon information and belief, Defendants have wrongfully misappropriated Chapdelaine's confidential information, by using the confidential information for the Defendants' own competitive advantage, in violation of the confidential relationship that existed between Chapdelaine and the Defendants.

67.     Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Chapdelaine, for which it has no adequate remedy at law.

### SIXTH CAUSE OF ACTION
**(Unfair Competition)**

68.     Chapdelaine repeats and realleges each and every allegation set forth in paragraphs 1 through 67 above as if fully set forth herein.

69.     Chapdelaine has invested significant and specialized labor, skill and expenditures in the development of the Fail Management System and for the marketing and licensing of the Fail Management System, based upon its industry knowledge, experience and contacts.

70.     Chapdelaine's Fail Management System was novel and concrete, both absolutely and specifically to the Defendants, at the time of Chapdelaine's disclosure of the Fail Management System to the Defendants.

71.     Chapdelaine further disclosed and provided confidential information to the Defendants with respect to the Fail Management System, and the value, benefits and fruits of its labor, skills and expenditures, in furtherance of developing a licensing or other business relationship with the Defendants, including, but not limited to, its strategy for business development associated with the Fail Management System.

72.     Upon information and belief, Defendants intentionally and in bad faith misappropriated the information and value received from Chapdelaine's labor, skills and

expenditures to Defendants' commercial advantage by developing a competing fail management system based on Chapdelaine's confidential disclosures without remuneration to Chapdelaine.

73.     Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Chapdelaine, for which it has no adequate remedy at law.

## SEVENTH CAUSE OF ACTION
### (Tortious Interference with Economic Relations)

74.     Chapdelaine repeats and realleges each and every allegation set forth in paragraphs 1 through 73 above as if fully set forth herein.

75.     Upon information and belief, Defendants are aware that Chapdelaine has been negotiating and discussing prospective business relations, including the licensing of Chapdelaine's Fail Management System, with members of the banking and financial services industries.

76.     Upon information and belief, Defendants have contacted one or more Chapdelaine's potential licensees in order to induce them not to enter into agreements with Chapdelaine.

77.     Upon information and belief, such efforts include the suggestions of retaliatory action in the event the potential licensee entered into an agreement with Chapdelaine.

78.     Upon information and belief, such conduct was motivated by ill will towards Chapdelaine and was done solely to harm and disrupt Chapdelaine's prospective business relationships with such potential licensees.

79.     As a result of the foregoing, Defendants have intentionally interfered with Chapdelaine's prospective business relationships and caused potential licensees not to enter into agreements with Chapdelaine.

80.     Defendants have interfered and are continuing to interfere with Chapdelaine's

14

business relations with potential licensees by means that are unfair, dishonest and improper.

81.    Such conduct on the part of Defendants has caused and will continue to cause irreparable injury to Chapdelaine, for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Chapdelaine demands judgment against Defendants as follows:

1.    Awarding Chapdelaine damages in an amount to be determined at trial, for injuries sustained by Chapdelaine by virtue of Defendants' wrongful and anticompetitive conduct in violation of Section 2 of the Sherman Act, 15 U.S.C. §2, which damages are to be trebled in accordance with 15 U.S.C. §15;

2.    Preliminarily and permanently enjoining and restraining Defendants, and all of those acting in concert with them, including their subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns from continuing to commit the antitrust violations alleged above, and requiring them to take affirmative steps to dissipate the effects of their prior violations;

3.    Preliminarily and permanently enjoining and restraining Defendants, and all of those acting in concert with them, including their subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, from: (a) the wrongful use of Chapdelaine's Fail Management System, and all confidential information encompassed thereby, to Defendants' own commercial advantage without remuneration to Chapdelaine; (b) disclosing or misusing any confidential information obtained by the Defendants in connection with their confidential relationship with Chapdelaine; (c) engaging in any other activity constituting misappropriation, unfair competition, breach of contract, violation of Lanham Act § 43(a), or tortious interference with Chapdelaine's relations with prospective licensees; and (d) requiring

Defendants to take affirmative steps to dissipate the effects of their unlawful conduct, including, but not limited to, returning any information and material concerning Chapdelaine's Fail Management System, provided by Chapdelaine pursuant to the Non-Disclosure Agreement;

4.     Awarding Chapdelaine its actual damages sustained by reason of the Defendants' wrongful acts, together with interest thereon in an amount to be determined at trial but believed to be in excess of $100 million;

5.     Awarding Chapdelaine damages for Defendants' violation of 15 U.S.C. § 1125(a), including an enhanced award under 15 U.S.C § 1117, in view of Defendants' intentional conduct;

6.     Awarding Chapdelaine punitive damages in an amount to be determined, in view of Defendants' malicious conduct;

7.     Awarding Chapdelaine its costs of bringing this action and its reasonable attorneys fees; and

8.     Awarding Chapdelaine such other and further relief as to which they may be entitled, including costs and reasonable attorney's fees, together with pre-judgment interest.


Dated:  New York, New York
        December 21, 2005                    Respectfully submitted,
                                             TORYS LLP



                                   By:   _____/s_____
                                         Louis S. Ederer (LE 7574)
                                         John Maltbie (JM 3658)
                                         237 Park Avenue
                                         New York, New York 10017
                                         (212) 880-6000
                                         Attorneys for Plaintiff
                                         Chapdelaine Corporate
                                         Securities & Co.

5976685.3
32715-2001