**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
                  :

**CHAPDELAINE CORPORATE**
**SECURITIES & CO.,**                :

                  :

         **Plaintiff,**      :    **OPINION AND ORDER**

                  :

    **- against -**          :    **05 Civ. 10711 (SAS)**

                  :

**THE DEPOSITORY TRUST &**    :
**CLEARING CORPORATION, FIXED**  :
**INCOME CLEARING CORPORATION** :
**and NATIONAL SECURITIES**    :
**CLEARING CORPORATION,**    :

                  :

         **Defendants.**  :
-----------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Chapdelaine Corporate Securities & Co. ("Chapdelaine") is suing The

Depository Trust & Clearing Corporation ("DTCC"), Fixed Income Clearing

Corporation ("FICC"), and National Securities Clearing Corporation ("NSCC")

(collectively, "Depository") for compensatory and punitive damages, as well as

injunctive relief. Chapdelaine alleges violations of antitrust law, false advertising

in violation of the Lanham Act, and various state-law claims. Depository now

moves to dismiss the two federal claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the following reasons, the false advertising claim is dismissed with leave to replead and the motion is denied in all other respects.

## II. BACKGROUND

The following facts are drawn from the Complaint and assumed to be true for the purposes of this motion. Chapdelaine serves as a financial intermediary between dealers and dealer banks in brokering corporate bonds and United States Government zero-coupon securities.[2] Chapdelaine developed and owns the software-based Fail Management System that enables licensees to track and confirm failed fixed-income securities trades, including mortgage-backed securities.[3] The Fail Management System is the subject of multiple pending United States patent applications.[4] With the goal of providing efficient service to mortgage-backed securities customers, the Fail Management System allows users

---

[1] Depository also requests that if its motion is granted the Court decline to exercise supplemental jurisdiction over the remaining state law claims.

[2] *See* Complaint ("Compl.") ¶ 11.

[3] *See id.* ¶ 12. The parties have not precisely defined the term "failed fixed-income securities trades."

[4] *See id.*

to manipulate failed securities transactions data through an internet interface.[5]

Depository is a clearing house owned by its users, such as the New York Stock Exchange and the National Association of Securities Dealers.[6] In conjunction with its wholly owned subsidiaries, FICC and NSCC, DTCC facilitates post-trade clearance, settlement, and depository transactions.[7] Among the other financial services Depository provides is automated trade comparison.[8] In or about August 1990, Depository's subsidiary, NSCC, introduced the Reconfirmation and Pricing Service System ("RECAPS").[9] The RECAPS capabilities include processing failed securities trades for specific stock exchanges.[10]

In or about February 2005, Chapdelaine began negotiating with Depository for the purpose of licencing the Fail Management System.[11]

---

[5]   *See id.* ¶ 21.

[6]   *See id.* ¶ 7.

[7]   *See id.* ¶¶ 13-15.

[8]   *See id.* ¶ 14.

[9]   *See id.* ¶ 17.

[10]   *See id.* ¶¶ 16-17.

[11]   *See id.* ¶ 24.

3

Chapdelaine and Depository entered into a Non-Disclosure Agreement, pursuant to which Depository received functional specifications and other information necessary to replicate the Fail Management System.[12] During the negotiation period with Depository, Chapdelaine made proposals to other potential Fail Management System licensees.[13] The potential licensees preferred to await the outcome of Chapdelaine's negotiations with Depository prior to making their licensing decisions.[14] However, in September 2005, Chapdelaine terminated negotiations with Depository.[15] Subsequent to the discontinued negotiations, Chapdelaine continued to make proposals to potential Fail Management System licensees.[16]

On or about November 3, 2005, Depository announced its plans to develop its own software system to confirm failed trades for fixed-income securities.[17] To develop such a system, Depository would have to materially

---

[12]    *See id.* ¶¶ 25-26.

[13]    *See id.* ¶ 29.

[14]    *See id.*

[15]    *See id.* ¶ 28.

[16]    *See id.* ¶ 30

[17]    *See id.* ¶ 31.

4

replicate the Fail Management System.[18]  But Depository had forfeited its right to develop a software system that competed with Chapdelaine's system by entering into a Non-Disclosure Agreement.[19]  Nonetheless, Depository's announcement, made at a bond market industry conference, caused potential Fail Management System licensees to cease negotiations with Chapdelaine.[20]  Thus, according to Chapdelaine, Depository's announcement was false and issued for the purpose of discouraging potential licensees from negotiating or entering into agreements with Chapdelaine.[21]

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[22]  Complaints are not required to

---

[18]   *See id.* ¶ 34.

[19]   *See id.* ¶ 35.

[20]   *See id.* ¶ 32.

[21]   *See id.* ¶ 33.

[22]   *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"lay out facts corresponding to every 'element' of a legal theory."[23] Plaintiffs

plead claims "which is to say, grievances," and need not allege "either the factual

or legal 'elements' of a prima facie case."[24] Plaintiffs receive "the benefit of any

fact that could be established later consistent with the complaint's allegations."[25]

Thus, when deciding a motion to dismiss, courts must accept all

factual allegations in the complaint as true, and draw all reasonable inferences in

the plaintiff's favor.[26] Although the plaintiff's allegations are taken as true, the

claim may still fail as a matter of law if it appears beyond doubt that the plaintiff

can prove no set of facts in support of its claim which would entitle it to relief, or

if the claim is not legally feasible.[27]

---

[23]   *Simpson v. Nickel*, -- F.3d --, No. 05-4686, 2006 WL 1585445, at *1
(7th Cir. June 12, 2006).

[24]   *Id.* (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)).

[25]   *Id.* at *2. The task of the court in ruling on a Rule 12(b)(6) motion is
"merely to assess the legal feasibility of the complaint, not to assay the weight of
the evidence which might be offered in support thereof." *Eternity Global Master
Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir.
2004) (quotation and citation omitted).

[26]   *See Ontario Pub. Serv. Employees Union Pension Trust Fund v.
Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004) (citation omitted).

[27]   *See, e.g., Official Comm. of Unsecured Creditors of Color Tile, Inc. v.
Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2d Cir. 2003).

## B. Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) does not require "a plaintiff to plead the legal theory, facts, or elements underlying his claim."[28] To comply with Rule 8, a party need not plead evidence.[29] A complaint must merely "'give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[30] Fair notice is "'that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial.'"[31] Accordingly, a complaint "'need not

---

[28] *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir. 2005) (citations omitted).

[29] *See Utility Metal Research, Inc. v. Generac Power Sys., Inc.*, No. 05-4940, 2006 WL 1408360, at *1 (2d Cir. May 18, 2006) (citing *Swierkiewicz,* 534 U.S. at 510-11).

[30] *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 48 (1957)).

[31] *Wynder v. McMahon,* 360 F.3d 73, 79 (2d Cir. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). This notice pleading standard relies on the "'liberal opportunity for discovery and the other pretrial procedures'" to more precisely disclose "'the basis of both claim and defense and to define more narrowly the disputed facts and issues.'" *Century 21, Inc. v. Diamond State Ins. Co.,* 442 F.3d 79, 83 (2d Cir. 2006) (quoting *Conley,* 355 U.S. at 47-48). *See also Swierkiewicz,* 534 U.S. at 512. *Accord Conley,* 355 U.S. at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle

7

'set out in detail the facts upon which' the claim is based.'"[32] Thus, a complaint
"[may] not be dismissed on the ground that it is conclusory or fails to allege
facts."[33]

## C. Section Two of the Sherman Antitrust Act

The Rule 8(a) standard applies to cases involving monopolization
allegations.[34] Because the proof in antitrust suits may be "'largely in the hands of
the alleged conspirators . . . dismissals prior to giving the plaintiff ample
opportunity for discovery should be granted very sparingly.'"[35]

### 1. Standing

The following criteria must be satisfied in order to establish standing
to bring an antitrust suit: (1) plaintiff must assert an antitrust injury and (2)

that the purpose of pleading is to facilitate a proper decision on the merits.").

[32]     *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir. 2006) (citing
*Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 107 (2d Cir. 2005) (quoting *Conley,* 355
U.S. at 47)).

[33]     *In re Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d 281, 323
(S.D.N.Y. 2003) (quoting *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002)).

[34]     *Twombly,* 425 F.3d at 108-109 (quoting *George C. Frey Ready-Mixed
Concrete, Inc., v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553-54 (2d Cir.
1977) ("'no heightened pleading requirements apply in antitrust cases'").

[35]     *Id.* at 109 (quoting *Poller v. Columbia Broad Sys., Inc.,* 368 U.S. 464,
473 (1962)).

plaintiff must be a proper plaintiff to assert the antitrust laws.[36] For the first prong, "antitrust plaintiffs must assert harm to competition as a whole," by "alleging adverse effects on the price, quality, or output of the relevant good or service."[37] The antitrust injury must be "of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful."[38] Because antitrust laws serve to protect competition, antitrust plaintiffs "must allege not only cognizable harm to [themselves], but an adverse effect on competition market-wide."[39]

For the second prong, the court must evaluate whether the plaintiff is "an efficient enforcer of the antitrust laws."[40] The following non-exhaustive list of factors should be considered in making this evaluation:

---

[36] *See New York Medscan LLC v. New York Univ. Sch. Of Med.,* --F. Supp. 2d --, No. 05 Civ. 4653, 2006 WL 1140720, at *4 (S.D.N.Y. May 1, 2006) (quoting *Balaklaw v. Lovell,* 14 F.3d 793, 797 n.9 (2d Cir. 1994)).

[37] *Id.* at *5 (citing *Aventis Envtl. Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 503 (S.D.N.Y. 2005)).

[38] *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334 (1990) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977)).

[39] *Todd,* 275 F.3d at 213.

[40] *New York Medscan*, 2006 WL 1140720, at *5.

9

(1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) the existence of an improper motive; (3) whether the injury was of a type that Congress sought to redress with the antitrust laws; (4) the directness of the connection between the injury and alleged restraint in the relevant market; (5) the speculative nature of the damages; and (6) the risk of duplicative recoveries or complex apportionment of damages.[41]

## 2. Elements

In order to state a claim for monopolization pursuant to section two of the Sherman Antitrust Act, a plaintiff must establish the following: "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'"[42] With respect to the second element, the Supreme Court mandates that "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct."[43]

A "determination of what constitutes a relevant market" is "a deeply

---

[41]    *Id.* (citing *Balaklaw,* 14 F.3d at 797 n. 9 (citing *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters,* 459 U.S. 519, 537-45 (1983))).

[42]    *Pepsico, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).

[43]    *Verizon Commc'ns, Inc. v. Law Office of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

'fact-intensive inquiry' and 'courts are hesitant to grant motions to dismiss for failure to plead the relevant product market.'"[44] "[A]n alleged product market must bear a 'rational relation to the methodology courts prescribe to define a market for antitrust purposes.'"[45] The product market definition is guided by an "'analysis of the interchangeability of use or the cross-elasticity of demand.'"[46] Dismissal on the pleadings may be appropriate where the complaint either: (1) fails to limit a market to a single "brand, franchise, institution, or comparable entity that competes with potential substitutes" or (2) fails to attempt a "plausible explanation as to why a market should be limited in a particular way."[47]

## D. False Advertising

Rule 8(a) also applies to pleading a false advertising claim.[48] In order

[44] *Doron Precision Sys. v. FAAC, Inc.,* 423 F. Supp. 2d 173, 180 (S.D.N.Y. 2006) (citing *New York Jets LLC v. Cablevision Sys. Corp.,* No. 05 Civ. 2875, 2005 WL 2649330, at *5 (S.D.N.Y. Oct. 17, 2005) (quoting *Todd v. Exxon Corp.,* 275 F.3d 191, 199-200 (2d Cir. 2001) and *Creative Copier Servs. v. Xerox Corp.,* 344 F. Supp. 2d 858, 865 (D. Conn. 2004)).

[45] *Todd,* 275 F.3d at 200 (quoting *Gianna Enters. v. Miss World (Jersey) Ltd.,* 551 F. Supp. 1348, 1354 (S.D.N.Y. 1982)).

[46] *Id.* (quoting *Gianna Enters.,* 551 F. Supp. at 1354).

[47] *Id.*

[48] *See Nasdaq Stock Mkt., Inc. v. Archipelago Holdings, LLC,* 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004) (Lanham Act claims are subject to the liberal pleading requirements of Rule 8).

11

to establish a violation of section 43(a) of the Lanham Act, a plaintiff must show that defendant: (1) made "false or misleading factual

 representations regarding the nature, characteristics, or qualities" of defendant's or plaintiff's goods or services; (2) "used the false or misleading representations 'in commerce'"; (3) made false or misleading representations "in the context of commercial advertising or commercial promotion"; and (4) made plaintiff believe that it "was likely to be damaged by the false or misleading factual representations."[49] In order for the challenged conduct to constitute commercial advertising or promotion under the third factor, the defendant must have disparaged a service or product in order to promote its own service or product.[50]

"'In order to establish standing to sue under [the Lanham Act], a plaintiff must demonstrate a 'reasonable interest to be protected' against the advertiser's false or misleading claims, and a 'reasonable basis' for believing that

---

[49]    *Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 823 (S.D.N.Y. 1992) (citing *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1548-49 (2d Cir. 1991)). *Accord World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 530 (S.D.N.Y. 2001).

[50]    *See World Wrestling*, 142 F. Supp. 2d at 530. *See also Sodexho USA, Inc. v. Hotel & Rest. Employees & Bartenders Union*, 989 F. Supp. 169, 172 (D. Conn. 1997).

this interest is likely to be damaged by the false and misleading advertising.'"[51]

To meet the "reasonable basis" prong, a plaintiff must demonstrate "both likely injury and a causal nexus to the false advertising."[52] The Second Circuit has "adopted a flexible approach toward the showing a Lanham Act plaintiff must make on the injury and causation component of its claim."[53] "However, the likelihood of the injury and causation must be demonstrated; they will not be presumed by a showing that the parties are competitors and the advertisements are false."[54]

## IV. DISCUSSION

### A. Section Two of the Sherman Antitrust Act

#### 1. Standing

Depository moves to dismiss the Sherman Antitrust Act claim on multiple grounds. *First*, with respect to standing, Depository argues that the

---

[51]    *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994) (quoting *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982)).

[52]    *Id.*

[53]    *Id.*

[54]    *Clark Consulting, Inc. v. Financial Solutions Partners, LLC,* No. 05 Civ. 06296, 2005 WL 3097892, at *3 (S.D.N.Y. Nov. 17, 2005) (citing *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980)).

13

Complaint alleges harm to a single competitor instead of asserting a plausible theory of anticompetitive effects on the competitive process.[55] *Second*, Chapdelaine's allegations of tortious conduct alone are insufficient to support a claim that may be redressed by antitrust laws.[56] *Third*, Chapdelaine has not defined a relevant product market in which the effects of Depository's conduct can be evaluated and has not established a direct connection between the injury and alleged conduct.[57]

Chapdelaine has satisfied the two-prong test for standing to file an antitrust claim. *First*, drawing all reasonable inferences in Chapdelaine's favor, its Complaint pleads an antitrust injury. As a result of Depository's alleged conduct, Chapdelaine has been effectively foreclosed from competing in the relevant market, thus decreasing the number of alternatives available to consumers of such products.[58] In the process, Depository has or is likely to artificially inflate prices

---

[55]     *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the First and Second Causes of Action of Plaintiff's Complaint ("Def. Mem.") at 12.

[56]     *See id.* at 16.

[57]     *See id.* at 16-17.

[58]     *See* Compl. ¶ 45.

14

and force customers to accept inferior technology.[59] Thus, Chapdelaine has alleged harm to competition as a whole as well as adverse effects on price, quality, and output of the relevant service.[60]

*Second*, application of the *Balaklaw* factors favors the conclusion that Chapdelaine is an "efficient enforcer" of the antitrust laws. *First*, Chapdelaine alleges that its loss of potential licensees and exclusion from the market for clearing services for mortgage-backed securities stems directly from Depository's alleged false public statements and suggestion of retaliation.[61] *Second*, Depository's alleged motive was to prevent Chapdelaine's introduction of the Fail Management System and thereby harm and disrupt Chapdelaine's prospective business relationships with potential licensees.[62] *Third*, Congress seeks to protect competition as a whole, not competitors.[63] Thus, Chapdelaine claims that Depository's conduct has restrained and effectively foreclosed actual and potential

---

[59]     *See id.*

[60]     *See New York Medscan,* 2006 WL 1140720, at *18 (an antitrust injury is adequately alleged where plaintiffs claim defendants' conduct caused reduced competition in the provision of services resulting in the risk of increased prices for such services).

[61]     *See* Compl. ¶¶ 42, 47, 77.

[62]     *See id.* ¶¶ 42, 44, 78.

[63]     *See Todd,* 275 F.3d at 213.

15

competition in the market through adverse effects on price, quality, and output of software technology.[64]

*Fourth,* Chapdelaine argues that absent Depository's conduct, Chapdelaine would have introduced its new Fail Management System into the market, in direct competition with Depository.[65] However, since Depository falsely announced its software development and suggested retaliatory action against potential licensees, Chapdelaine's potential customers were actively discouraged from entering into a relationship with Chapdelaine.[66] *Fifth,* Chapdelaine claims that Depository's conduct caused potential licensees to cease negotiations, resulting in Chapdelaine's financial loss.[67] For pleading purposes, at least, this injury is not speculative.[68] *Sixth*, there is no indication at this point of a risk of duplicative recoveries. Thus, the six factors lean to varying degrees in Chapdelaine's favor. For these reasons, Chapdelaine is a proper antitrust plaintiff.

---

[64]     *See* Compl. ¶ 45.

[65]     *See id.* ¶ 42.

[66]     *See id.* ¶¶ 30-31, 77.

[67]     *See id.* ¶¶ 32, 48.

[68]     *See A.I.B. Express, Inc. v. FedEx Corp.,* 358 F. Supp. 2d 239, 248 (S.D.N.Y. 2004) (for pleading purposes, an allegation of a prospective injury to plaintiff's business is not speculative).

16

## 2. Monopolization Claim

Depository moves to dismiss the monopolization claim on two grounds. *First*, Depository contends that Chapdelaine has not pled a relevant market because it is engaged in a different business than Chapdelaine.[69] Depository, a company registered by the SEC, is the nation's principal securities depository and also functions as a utility to provide automated centralized clearing and settlement services.[70] Chapdelaine, on the other hand, is an interdealer broker and software developer, which performs clearance, settlement, and other services for securities that include mortgage-backed securities.[71] *Second*, Depository argues that Chapdelaine fails to allege that Depository willfully acquired or maintained that monopoly power through anticompetitive conduct.[72] But, drawing all reasonable inferences in Chapdelaine's favor, I am satisfied that Chapdelaine has adequately alleged a monopolization claim in violation of the Sherman Act.

With regard to Depository's first argument, Chapdealine alleges that Depository possesses monopoly power over the market for clearing services for

---

[69]     *See* Def. Mem. at 2.

[70]     *See id.* at 5.

[71]     *See id.* at 7-8.

[72]     *See id.* at 2.

17

the mortgage-backed securities market in the United States.[73] Although the

Complaint identifies the clearing services for the mortgage-backed securities as

the relevant market, the actual relevant market appears to be the software-based

failed fixed-income securities trades management market. Chapdelaine's Fail

Management System manages information that may be useful for the securities

clearing services market. To "survive a motion to dismiss, a plaintiff need only

allege a 'plausible' market."[74] At this early stage, Chapdelaine's stated market is

sufficiently plausible to withstand the motion to dismiss.[75]

With regard to Depository's second argument, Chapdelaine alleges

that Depository willfully maintained monopoly power by engaging in multiple acts

of anticompetitive and unreasonably exclusionary conduct. *First*, Depository

made a false statement at a bond market industry conference, attended by potential

Chapdelaine customers, to discourage potential licensees from negotiating or

entering into agreements with Chapdelaine.[76] *Second*, Depository misappropriated

---

[73]     *See* Compl. ¶ 42.

[74]     *Todd,* 275 F.3d at 200.

[75]     *See id.* at 204 (although plaintiff's allegation supports a plausible market, it is not indicative of whether plaintiff will succeed in proving the alleged market).

[76]     *See* Compl. ¶¶ 31, 33.

18

proprietary information and breached a Non-Disclosure Agreement in which

Depository agreed not to develop a competing fail management system software.[77]

*Third*, Depository induced potential Fail Management System licensees not to

enter into agreements with Chapdelaine.[78] Specifically, Depository suggested

retaliatory action in the event that potential licensees entered into agreements with

Chapdelaine.[79] In short, Depository intentionally foreclosed Chapdelaine from

entering into prospective business relationships. Consequently, Chapdelaine was

precluded from competing in the market for clearing services in mortgage-backed

securities.

## B. False Advertising - Section 43(a) of the Lanham Act

Depository contends that Chapdelaine lacks standing to press a false

advertising claim, because it failed to allege a protected interest and a reasonable

basis for believing that the interest would be damaged by Depository's false

statement.[80] Depository is correct. The Complaint does not allege a protectable

interest because Depository only made a pre-announcement of its intention to

---

[77]     *See id.* ¶ 35.

[78]     *See id.* ¶ 76.

[79]     *See id.* ¶ 77.

[80]     *See* Def. Mem. at 21.

19

develop a product or service that does not yet exist. Therefore, Chapdelaine lacks

standing.

Depository also moves to dismiss on the ground that its statement was

not material. Although Chapdelaine alleges that Depository made a false

statement, the Complaint does not plead that the misrepresentation addressed the

"nature, characteristics, or qualities" of Depository's software system.[81] Instead,

Chapdelaine alleges that the misrepresentation pertained to the *development plans*

for Depository's fail management services software.[82] This is not sufficient to

state a claim under the Lanham Act.

Finally, Depository argues that Chapdelaine has failed to allege that

the false statement was made in the context of commercial advertising or

commercial promotion. Depository is right again. Depository's statement, was

not "made in commerce" as it only stated its intention to develop a product or

service. Thus, Depository's motion to dismiss on this ground is also granted.[83]

---

[81]    *See Towers Fin. Corp.*, 803 F. Supp. at 823.

[82]    *See* Compl. ¶ 50. *But see PDK Labs v. Friedlander,* 103 F.3d 1105, 1112 (2d Cir. 1997) (a motion to dismiss a Lanham Act claim was properly granted where the subject of an alleged false advertisement was a competing product that did not exist).

[83]    The fourth element is satisfied by the allegation that the misrepresentations likely damaged Chapdelaine's business and property interests

## V. CONCLUSION

For the foregoing reasons, Depository's motion to dismiss is granted in part and denied in part. Chapdelaine's antitrust claim survives, but its false advertising claim is dismissed with leave to replead.[84] The Clerk of the Court is directed to close this motion [number 8 on the docket sheet]. Any amended complaint must be filed within twenty days of the date of this Order. A conference is scheduled for August 9, 2006 at 11:00 a.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           July 13, 2006

---

as a result of the cessation of negotiations with potential licensees. *See* Compl. ¶ 32.

[84]     Because one federal claim has survived the motion to dismiss, I do not address the question of supplemental jurisdiction.

21

## - Appearances -

**For Plaintiff:**

Louis S. Ederer, Esq.
Christopher M. Caparelli, Esq.
John Maltbie, Esq.
TORYS LLP
237 Park Avenue
New York, New York 10017
(212) 880-6000

**For Defendants:**

Gregg M. Mashberg, Esq.
Martha E. Gifford, Esq.
John C. Stellabotte, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10026
(212) 969-3000